**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| HAMON HOLDINGS CORPORATION, *et al.*,[1] | Case No. 22-10375 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket Nos. 161, 210** |

**ORDER (A) APPROVING THE SALE OF CERTAIN ASSETS OF THE
DEBTOR HAMON RESEARCH-COTTRELL INC. FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES AND (B) GRANTING RELATED RELIEF**

Upon consideration of the *Debtors' Motion for Entry of Orders (I) Establishing Bidding Procedures and (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets* [Docket No. 161] (the "Motion")[2] filed in these Chapter 11 cases pursuant to, *inter alia*, sections 105, 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1; and the Court having entered the *Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures and the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 210] (the "Bidding Procedures Order"), which approved, *inter alia*, (a) the Bidding Procedures, (b) the Assumption and Assignment Procedures, and (c) the Bidding and Auction Process (each as defined in the Bidding Procedures Order); and the Debtors having conducted the Auction; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Hamon Holdings Corporation (4440); Hamon Corporation (0774); Hamon Custodis, Inc. (5109); Hamon Deltak, Inc. (2153); Hamon Research-Cottrell, Inc. (5111); and Research-Cottrell Cooling, Inc. (2385). The Debtors' mailing address is 46 E. Main Street Suite 301 (P. O. Box 1500) Somerville, NJ 08876.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Bidding Procedures (as defined in the Motion), as applicable, or to the extent not defined therein, the Motion.

upon the transcript of the Auction (including the disclosures, representations and agreements contained therein) (the "Auction Transcript"); and after a hearing on the Motion commencing on August 2, 2022, at 1:00 p.m. (the "Sale Hearing") to consider the Sales to each of the Successful Bidders identified following the conclusion of the Auction, including The Babcock & Wilcox Company, a Delaware corporation (or its designated affiliate, the "Purchaser"), the Successful Bidder for certain of the assets of debtor Hamon Research-Cottrell Inc. (the "Seller" and the sale of its assets being, generally, the "HRC Sale"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion and the relief sought therein, including the Official Committee of Unsecured Creditors appointed in these cases (the "Committee" or the "Consultation Party"); and the Court having reviewed and considered the Motion, all relief related thereto, any objections thereto, and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing; and the Court having reviewed the *Supplemental Declaration of Perry M. Mandarino Regarding the Debtors' Retention and Employment of B. Riley Securities, Inc. as Their Investment Banker* (the "Mandarino Disclosure Declaration") [Docket No. 227]; and upon the *Declaration of Perry M. Mandarino Regarding Marketing of Assets and Solicitation of Bids* [Docket No. 257] (the "Mandarino Sale Declaration"); and upon the *Declaration of Neil Dahlberg Regarding Outcome of Auctions and Selection of Successful Bidders* [Docket No. 261] (the "Dahlberg Sale Declaration," and together with the Mandarino Sale Declaration, the "Sale Declarations"); and the Court having found that after an extensive marketing process conducted by the Debtors and their investment banker in these Chapter 11 Cases, B. Riley Securities, Inc. ("B. Riley"), the Purchaser has submitted the highest and otherwise best offer for the Purchased Assets (defined below); and it appearing that the relief requested in the Motion and the Sale to the Purchaser is in

2

the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion, in the Declarations, and at Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:**

A.    **Final Order**. This order (the "Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure (the "Civil Rules"), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs immediate entry of judgment as set forth herein.

B.    **Bankruptcy Rule 7052**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    **Jurisdiction and Venue**. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

D.      **Statutory Predicates**. The statutory predicates for the relief granted in this Sale Order are sections 105, 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

E.      **Notice**. As evidenced by the affidavits of service and publication previously filed with the Court [Docket Nos. 186, 219, 238, 243], and based upon the representations of counsel at the Sale Hearing, (i) actual, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the HRC Sale, the relief requested in this Order, the assumption and assignment of the Selected Assumed Contracts and the transactions contemplated thereby has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, and 6006 and in compliance with the Bidding Procedures Order and the Bidding Procedures, (ii) such notice was proper and in all respects compliant with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and provided a fair and reasonable opportunity for all parties in interest, including the Counterparties to the Selected Assumed Contracts, to object or be heard in respect of the Motion and the relief requested therein, and (iii) no other or further notice of the Motion, the Sale Hearing, and the HRC Sale is or shall be required.

F.      In accordance with the provisions of the Bidding Procedures Order, the Debtors caused the Assumption Notice[3] to be served, in compliance with the requirements of due process and the Bankruptcy Code, upon the Counterparties properly notifying such parties: (i) that the Debtors potentially seek to assume and assign the Selected Assumed Contracts; and (ii) of the relevant Cure Amounts. Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service of

---

[3] As used herein, "Assumption Notice" shall have the definition given to it in the Bidding Procedures Order and shall also include the Assumption Notice filed at Docket No. 213, the Supplemental Assumption Notice filed at Docket No. 224, and the Second Supplemental Assumption Notice filed at Docket No. 245.

all Assumption Notices were good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the Selected Assumed Contracts. The Counterparties have had an opportunity to object to the cure amounts set forth in the Cure Notice and otherwise to object to, or withhold consent for, the assumption and assignment of the Selected Assumed Contracts.

G.    **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including the Sale Notice Parties.

H.    **Corporate Authority**. The Debtors have full corporate power and authority to execute the Purchase Agreement with respect to the HRC Sale and all other documents contemplated thereby. The Sale of the Purchased Assets by the Seller has been duly and validly authorized by all necessary corporate action of the Seller. The Seller has all the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement (defined below) and has taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Seller of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Purchase Agreement or this Sale Order, are required for the Seller to consummate such transactions.

I.    **Sound Business Purpose**. The Debtors have demonstrated good, sufficient, and sound business purpose and justification for the HRC Sale to the Purchaser. The terms and conditions of the Successful Bid are more specifically set forth in the written Asset Purchase Agreement (the "Purchase Agreement") substantially in the form attached hereto as **Exhibit A**.

5

The Successful Bid and the HRC Sale via the Purchase Agreement (collectively, the "Purchased Assets") present the best opportunity to maximize value of the Seller's assets.

J.    **Sale in Best Interest**. Consummation of the HRC Sale of the Purchased Assets to the Purchaser is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

K.    **Arms'-Length Sale**. The Purchase Agreement was negotiated, proposed and entered into by the Seller and Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Seller nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Through the Mandarino Disclosure Declaration (a copy of which was provided to the Court) and the disclosures made on the Auction Transcript, the Debtors sufficiently disclosed to all parties in interest, including other bidders, the connections between their investment banker, B. Riley, and the Purchaser, Babcock & Wilcox Enterprises, Inc. Such disclosures were sufficient and adequately provided notice of such connections to all parties in interest and the connections disclosed therein do not conflict with any finding of fact or conclusion of law set forth in this Sale Order.

L.    **Highest and Best Value**. The Debtors determined, in accordance with their business judgment and in consultation with the Consultation Party, that the Successful Bid and resulting Purchase Agreement represents the highest or best value for the Purchased Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result. The Debtors' determination that the Purchase Agreement constitute the highest and best offer for the Purchased Assets is a valid and sound exercise of their fiduciary duties and business judgment. The Bidding and Auction Process was non-collusive and duly noticed and

6

provided a full, fair, and reasonable opportunity for any Potential Bidder to make an offer to purchase the Purchased Assets. The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order. The consideration provided by the Purchaser pursuant to the Purchase Agreement is fair and reasonable and constitutes reasonably equivalent value and fair consideration for the Purchased Assets.

      M.     **Good-Faith Purchaser**. The Purchaser is a good-faith purchaser for value and is entitled to all the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law. The Purchaser has acted and will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by its Purchase Agreement.

      N.     **Fair Consideration**. The consideration provided by the Purchaser for the Purchased Assets pursuant to its Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for such Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States; any state, territory, or possession thereof; and the District of Columbia.

      O.     **Free and Clear Sale**. The Seller is the sole and lawful owner of the Purchased Assets. Except as otherwise provided in the Purchase Agreement, the Purchased Assets shall be sold on an as-is, where-is basis, free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention, agreements, pledges, liens (including, without limitation, mechanic's, materialman's, and other consensual and non-consensual liens

7

and statutory liens), judgments, demands, encumbrances, rights of first refusal, consent rights under applicable non-bankruptcy law, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, "claims" (as that term is used and defined in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual, or other commitments, restrictions, interests, and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, or that purport to give any party a right of setoff or recoupment against, forfeiture, modification, right of first refusal, or purchase or repurchase right or option with respect to the Purchased Assets and/or the Debtors and/or Purchaser (all of the foregoing, collectively, the "Encumbrances") because, with respect to each person or entity asserting an Encumbrance, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object or withdrew objections to the HRC Sale are deemed to have consented to the HRC Sale pursuant to section 363(f)(2) and 365 of the Bankruptcy Code. Those

8

holders of Encumbrances who did object (if any) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code. A sale of the Purchased Assets other than one free and clear of all Encumbrances would adversely impact the Debtors, their estates, and their creditors, and would yield substantially less value for the Debtors' estates and with less certainty than the HRC Sale with the Purchaser.

P.     **Reliance by Purchaser**. The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale of the Purchased Assets were not free and clear of all Encumbrances, or if such Purchaser would, or in the future could, be liable for any such Encumbrances, including, as applicable, any liabilities related to the Debtors' business that will not be assumed by the Purchaser under its Purchase Agreement. The total consideration to be provided under the Purchase Agreement reflects the Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a), 363(f) and 365 of the Bankruptcy Code, with title and right to and possession of the Purchased Assets free and clear of all Encumbrances (including, without limitation, any potential derivative, vicarious, transferee, or successor liability interests or claims), except as expressly set forth in the Purchase Agreement.

Q.     **Prompt Consummation**. The Sale of the Purchased Assets must be approved and consummated promptly to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sale, and the Debtors and Purchaser intend to close the Sale as soon as possible in accordance with the Purchase Agreement..

R.     **No Fraudulent Transfer**. The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under either the Bankruptcy Code or the laws of the United States, any state, territory, possession or the District of Columbia

9

(including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act). The consideration provided by the Purchaser pursuant to the Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act). Neither the Seller nor Purchaser is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of, and within the meaning of, statutory or common law fraudulent conveyance and/or fraudulent transfer claims.

S.    **Purchaser Not an Insider; No Successor Liability**. Purchaser was and is not an "insider" or "affiliate" of the Debtors (as those terms are defined in the Bankruptcy Code) and no common identity of incorporators, directors or stockholders exists between the Purchaser and the Debtors. Pursuant to the Purchase Agreement, the Purchaser is not purchasing all of the Seller's assets because such Purchaser is not purchasing any of the Excluded Assets (as defined in the Purchase Agreement), and the Purchaser is not holding itself out to the public as a continuation of the Seller or any other Debtor. The HRC Sale does not amount to a consolidation, merger, or de facto merger of the Purchaser and the Seller or any other Debtor and/or any Debtors' estates; there is no substantial continuity between the Purchaser and the Debtors; there is no continuity of enterprise between the Purchaser and the Seller or any other Debtor; the Purchaser is not a mere continuation of the Seller or any other Debtor or the Debtors' estates; the Purchaser does not constitute a successor, continuation or assignee to or of the Seller or any other Debtor or the Debtors' estates; and Purchaser shall not be

DM3\8890762.9

liable for any Encumbrances or other liens, claims, or interests under any theory of successor
liability or similar legal basis.

       T.    **Legal, Valid Transfer.**  As of the Closing (as defined in the Purchase
Agreement) and payment of the Purchase Price (as defined in the Purchase Agreement), the
transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer
of such Purchased Assets and will vest such Purchaser with all right, title, and interest of the Seller
to such Purchased Assets free and clear of all Encumbrances except as expressly set forth in the
Purchase Agreement.  The consummation of the HRC Sale is legal, valid, and properly
authorized under all applicable provisions of the Bankruptcy Code, including but not limited to,
sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements
of such sections have been complied with in respect of the HRC Sale.

       U.    **Purchase Agreement Not Modified**.  The terms of the Purchase Agreement,
including any amendments, supplements, and modifications thereto, are fair and reasonable
in all respects, and the terms of the Sale Order shall not modify the terms of any Purchase
Agreement.

       V.    **No *Sub Rosa* Plan.** The HRC Sale does not constitute a *sub rosa* chapter 11
plan for which approval has been sought without the protections that a disclosure statement
would afford.  The HRC Sale neither impermissibly restructures the rights of the Debtors'
creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

       W.    **No Liability for Excluded Assets or Excluded Liabilities.** By consummating
the Sale and the transactions contemplated by the Purchase Agreement, neither the Purchaser
nor any of the Purchased Assets will be subject to any Encumbrance, claim, liability or
obligation arising out of, or relating to, any Excluded Asset or any Excluded Liabilities (as

DM3\8890762.9

defined in the Purchase Agreement), including, without limitation, under the Bankruptcy Code, any theory of successor or vicarious liability, any environmental law, or any other laws of the United States; any state, territory, possession thereof; or the District of Columbia.

X.     **Legal and Factual Bases**. The legal and factual bases set forth in the Motion, in the Declarations, the Mandarino Disclosure Declaration and at the Sale Hearing establish just cause for the relief granted herein.    The evidence presented, and disclosures made, by the Debtors and other parties in interest through the foregoing and otherwise were good, complete and adequate and provide more than ample evidentiary support for entry of this Sale Order and the relief granted herein.

Y.     **Cure Notices**. Notice as to the proposed assumption and assignment of each of the Selected Assumed Contracts was provided to all non-Debtor Counterparties to each of the Selected Assumed Contracts in accordance with the Assumption and Assignment Procedures approved in connection with the Bidding Procedures Order.    Such notice was sufficient and appropriate under the circumstances. No other or further notice of the assumption and assignment of the Selected Assumed Contracts is necessary or shall be required; *provided, however*, that if any executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts after the Sale Hearing or the entry of the Sale Order, the Debtors shall comply with ¶ 19(l) of the Assumption and Assignment Procedures with respect to any assumption or assignment thereof.

Z.     **Cure Amounts**.    The Cure Amounts established in accordance with the Assumption and Assignment Procedures are the sole amounts necessary under sections 365(b)(1)(A), 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults, provide

DM3\8890762.9

adequate assurance of cure and future performance, and pay all actual pecuniary losses under the Selected Assumed Contracts.

AA.   **Assumption and Assignment**.   The Seller's assumption and assignment to the Purchaser of the Selected Assumed Contracts identified in the Contracts & Cure Schedule attached to the Purchase Agreement pursuant to sections 363 and 365 of the Bankruptcy Code and this Sale Order is approved, notwithstanding any anti-assignment clause or other similar provision in such Selected Assumed Contracts, as provided by section 365(f) of the Bankruptcy Code.  The assumption and assignment of the Selected Assumed Contracts to the Purchaser is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, representing the reasonable exercise of sound and prudent business judgment of the Debtors. The Purchaser has provided evidence of adequate assurance of future performance by such Purchaser under the Selected Assumed Contracts consistent with sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Any Counterparty to a Selected Assumed Contract that failed to object to the Assumption Notice and/or Cure Amount by the date and on the terms set forth in the respective Assumption Notice is deemed to have consented to such assignment.  Any objections to the assumption and assignment of any of the Selected Assigned Contracts are hereby overruled.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

**General Provisions**

1.     The Motion is GRANTED and the HRC Sale of the Purchased Assets is APPROVED as set forth herein.

2.      All objections to the Motion or relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the HRC Sale of the Purchased Assets**

3.      The Purchase Agreement substantially in the form attached hereto as **Exhibit A** (including any amendments, supplements, and modifications thereto), and all the terms and conditions therein, is approved in all respects.

4.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the HRC Sale of the Purchased Assets to the Purchaser free and clear of all Encumbrances (except those specifically permitted by the Purchase Agreement), and the transactions contemplated thereby, is approved in all respects.

5.      Except as otherwise specifically provided in the Purchase Agreement, neither Purchaser nor its affiliates, subsidiaries, designees or transferees shall be liable for any claims against the Debtors or any of their predecessors or affiliates or any other third party whatsoever, nor, to the maximum extent permitted by applicable law, have successor or vicarious liabilities of any kind or character under any theory of law (including, without limitation, any product liability claims with respect to any Purchased Assets, inventory, or other assets sold, shipped, or delivered prior to the applicable Closing Date (as defined in the Purchase Agreement)), whether known or unknown as of the applicable Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or their business or any obligations of, or claims against, the Debtors or any of their predecessors or affiliates or any other third party whatsoever arising at any time, including, but not limited to, any pension-related (including contribution and withdrawal) liabilities, or liabilities on account of any taxes arising,

14

accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing Date, all of which liabilities or claims, if any, shall be the responsibility of the Debtors.

6.      All persons holding Encumbrances of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Encumbrances against the Purchaser, its affiliates, subsidiaries, designees, transferees, successors and assigns; and against the Purchased Assets, property or other assets of such persons and entities.

7.      The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order to consummate any Sale shall not affect the validity of such Sale to the Purchaser. The Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

8.      As good-faith Purchaser of the Purchased Assets, the Purchaser has not entered into an agreement or colluded with any other parties interested in the Purchased Assets, and neither a Purchaser nor Debtors have engaged in any conduct that would permit any Purchase Agreement to be avoided pursuant to section 363(n) of the Bankruptcy Code. The Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and as the result of arm's length bargaining positions and the Purchase Agreement is procedurally and substantively fair to all parties. No Purchaser is an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

DM3\8890762.9

**Sale and Transfer of Purchased Assets**

9.      Pursuant to section 363(b) of the Bankruptcy Code, the Seller shall sell the Purchased Assets to the Purchaser and consummate the HRC Sale in accordance with, and subject to the terms and conditions of, the Purchase Agreement and this Sale Order and to transfer and assign all right, title, and interest (including common-law rights) to all property, licenses, and rights to be conveyed in accordance with, and subject to the terms and conditions of, the Purchase Agreement.  The Debtors, including the Seller, are further authorized and directed to execute and deliver, and are empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, including, without limitation, the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to such Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Purchase Agreement.

10.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, and upon payment of the amounts due at Closing under the Purchase Agreement in accordance with this Sale Order, the Purchased Assets shall be transferred to the Purchaser upon the Closing Date free and clear of all Encumbrances and (except as otherwise expressly provided in the Purchase Agreement) of any kind or nature whatsoever.  All Encumbrances on the Purchased Assets of any kind or nature whatsoever shall attach (effective upon the transfer of the Purchased Assets to the Purchaser) to the proceeds of the Purchase Price with the same force, extent, validity, priority and effect, if any, as such Encumbrances formerly had against the Purchased Assets, if any,

16

subject to the parties' rights to challenge the extent, validity, priority and effect of the Encumbrances unless subject to and as otherwise provided in any other order of this Court in these Chapter 11 Cases. Additionally, for the avoidance of doubt, the Purchaser shall have no liability, obligation, or responsibility whatsoever to the Debtors, any governmental authority, or any other person with respect to, or in connection with, any applicable Excluded Asset or any Excluded Liability of any kind or character, whether known or unknown, as of the applicable Closing Date, whether fixed or contingent, including, without limitation, any liability or other obligation arising under the Bankruptcy Code, any environmental laws, or any other laws of the United States; any state, territory, or possession thereof; or the District of Columbia. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrance of record.

11.    On the Closing Date, this Sale Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser.

12.    All entities who are, on the Closing Date, in possession of some or all of the Purchased Assets on the Closing Date are hereby directed to surrender possession and make available such Purchased Assets to the Purchaser on such Closing Date.

13.    On the Closing Date of the HRC Sale, all persons and entities are authorized and directed to execute and file such documents and take all other actions as may be necessary to release their Encumbrances in the Purchased Assets, if any, as such Encumbrances may have been recorded or otherwise exist, with all such Encumbrances being preserved in the proceeds of the Acquired Assets as set forth in paragraph 10 above. If any person or entity that has filed

17

statements or other documents or agreements evidencing Encumbrances in all or any portion of the Purchased Assets and has not delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Encumbrances, which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, then the Purchaser and the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

14.    This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

15.    Except as expressly permitted by the Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all Counterparties, debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade, product liability, and other creditors, holding claims and/or Encumbrances of any kind or nature

18

whatsoever against or in the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated now existing or hereinafter arising, known or unknown), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting any such claims or Encumbrances against such Purchaser, its affiliates, designees, transferees, successors or assigns, and their assets and property, including the Purchased Assets.

16.    On the applicable Closing Date of each Sale, neither the Purchaser nor any of the Purchased Assets will be subject to any Encumbrance, claim, liability or obligation arising out of, or relating to, any Excluded Asset or any Excluded Liabilities (as defined in the Purchase Agreement), including, without limitation, under the Bankruptcy Code, any theory of successor or vicarious liability, any environmental law, or any other laws of the United States; any state, territory, possession thereof; or the District of Columbia.

17.    Subject to the terms and conditions of this Sale Order and the Purchase Agreement, the transfer of the Purchased Assets to the Purchaser on the applicable Closing Date pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of such Purchased Assets and shall vest such Purchaser and its designees, transferees, successors and assigns with all right, title, and interest in and to such Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever (except as otherwise provided in the Purchase Agreement), with all such Encumbrances to attach to the proceeds received by the Debtors with the same priority, validity, force and effect as such Encumbrances had in the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

19

18.     Notwithstanding the foregoing, nothing herein shall prevent the Debtors from seeking to enforce their rights under the Purchase Agreement, any documents ancillary to an Purchase Agreement or this Sale Order.

**Assumption and Assignment**

19.     The Debtors shall, in accordance with sections 105, 363 and 365 of the Bankruptcy Code, (a) assume and assign to the Purchaser, in accordance with the Purchase Agreement, effective upon the applicable Closing Date, those Selected Assumed Contracts identified in the Contracts & Cure Schedule attached to such Purchase Agreement, free and clear of all Encumbrances and other interests of any kind or nature whatsoever (except as may otherwise be expressly provided in such Purchase Agreement), as provided by section 365(f) of the Bankruptcy Code, and (b) execute and deliver to the Purchaser such documents or other instruments as such Purchaser deems may be reasonably necessary to assign and transfer the applicable Selected Assumed Contracts and any Assumed Liabilities (as defined in the Purchase Agreement) to such Purchaser in accordance with the Purchase Agreement.

20.     With respect to the Selected Assumed Contracts, (a) each Selected Assumed Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors have the authority under applicable law to assume each Selected Assumed Contract in accordance with section 365 of the Bankruptcy Code; (c) the Debtors have the authority under applicable law to assign each Selected Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in a Selected Assumed Contract that prohibit or condition the assignment of such Selected Assumed Contract or allow the party to such Selected Assumed Contract to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such

20

Selected Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the applicable Selected Assumed Contracts, in accordance with the Purchase Agreement, have been satisfied; (e) the Selected Assumed Contracts shall be transferred and assigned to, and following the applicable Closing Date, remain in full force and effect for the benefit of, the Purchaser in accordance with the Purchase Agreement, notwithstanding any provision in any such Selected Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to such Selected Assumed Contracts after such assignment to and assumption by the Purchaser in accordance with the Purchase Agreement, (f) each Counterparty that did not object to the assumption and assignment of the Selected Assumed Contracts to the applicable Purchase is deemed to have consented to such assumption and assignment, (g) upon each Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of each applicable Selected Assumed Contract.

21.    All defaults or other obligations of the Debtors under the applicable Selected Assumed Contracts arising or accruing prior to the applicable Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) are deemed fully cured on the later to occur of the applicable Closing Date and the payment of the Cure Amounts listed in the Assignment Notice by the Debtors or the Purchaser as required by the Purchase Agreement. To the extent that any Counterparty to a

21

Selected Assumed Contract did not object to its Cure Amount by the applicable Cure Objection Deadline, such Counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Selected Assumed Contract(s) to the Purchaser in accordance with the Purchase Agreement.

22.    The Assumption Notice reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Selected Assumed Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Purchaser of the applicable Selected Assumed Contracts in accordance with the Purchase Agreement.

23.    Upon the Debtors' assignment of the Selected Assumed Contracts to the Purchaser under the provisions of this Sale Order and payment of any Cure Amounts, no default shall exist under any Selected Assumed Contract, and no counterparty to any Selected Assumed Contract shall be permitted (a) to declare a default by the Purchaser under such Selected Assumed Contract or (b) otherwise take action against such Purchaser relating to pre-Closing Date performance of the applicable Selected Assumed Contract, including, but not limited to, as a result of the Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under such Selected Assumed Contract.

24.    Each non-Debtor party to a Selected Assumed Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Purchaser, its affiliates, subsidiaries, designees or transferees or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the applicable Closing, including those constituting applicable Excluded Liabilities or, against the Purchaser or its affiliates or subsidiaries, any counterclaim,

22

defense, setoff, recoupment, or any other claim asserted or assertable against the Debtors, and (ii) imposing or charging against the Purchaser, its affiliates, subsidiaries, transferees, or designees any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to such Purchaser of any Selected Assumed Contract in accordance with the Purchase Agreement. The validity of such assumption and assignment of each Selected Assumed Contract shall not be affected by any dispute between the Debtors and any non-Debtor party to a Selected Assumed Contract relating to such contract's respective Cure Amounts.

25.    There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Purchaser as a result of the assumption and assignment of the Selected Assumed Contracts.

26.    Except as provided in the Purchase Agreement or this Sale Order, after the Closing of each Sale, the Debtors and their estates shall have no further liabilities or obligations with respect to any applicable Assumed Liabilities and all holders of such Encumbrances are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property, or their assets or estates. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Selected Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition, of such Selected Assumed Contracts.

**Miscellaneous Provisions**

27.    The consideration provided by the Purchaser for the Purchased Assets pursuant to its Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for such Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent

DM3\8890762.9

value and fair consideration under the Bankruptcy Code and under the laws of the United States; any state, territory, or possession thereof; and the District of Columbia.

28.    Nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right (including, without limitation, any right to recoupment), claim, cause of action, defense, offset or counterclaim with respect to the Debtors' assets not subject to a Purchase Agreement.

29.    Except with respect to enforcing the terms of the Purchase Agreement and/or this Sale Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Purchase Agreement or this Sale Order.

30.    The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented through a written document signed by the parties in accordance with the terms thereof, after consultation with the Consultation Party, without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transaction contemplated hereby.

31.    Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

32.    This Court shall retain jurisdiction (a) to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents, or instruments executed therewith; (b) to compel transfer of the Purchased Assets to the Purchaser; (c) to compel the Purchaser to perform

24

all its obligations under the Purchase Agreement, including the payment of the Purchase Price; (d) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement; (e) to interpret, implement and enforce the provisions or this Sale Order; and (f) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Selected Assumed Contracts.

33.     The failure to include any particular provision of a Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court and the parties that the Purchase Agreement be approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between a Purchase Agreement and this Sale Order.

34.     The Debtor is hereby authorized to perform each of its covenants and undertakings as provided in the Purchase Agreement prior to each Closing without further order of the Court.

35.     This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of claims, Encumbrances or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser, and all successors and assigns of the Purchaser, the Purchased Assets, and any trustees, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion thereof to proceedings under chapter 7 under the Bankruptcy Code. This Sale Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

36.     As provided by Bankruptcy Rule 7062, this Sale Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the

DM3\8890762.9

effectiveness of this Order for fourteen (14) days are hereby waived, and this Sale Order shall be effective, and the parties may consummate the transactions contemplated by the Purchase Agreement immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions, and parties to the Purchase Agreement are authorized to close the Sale as soon as possible consistent with the terms of the Purchase Agreement.

**Dated: August 3rd, 2022**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

DM3\8890762.9