## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| HAMON HOLDINGS CORPORATION, *et al.*,[1] | Case No. 22-10375 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket Nos. 161, 210** |

## ORDER (A) APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTOR HAMON DELTAK, INC., FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND (B) GRANTING RELATED RELIEF

Upon consideration of the *Debtors' Motion for Entry of Orders (I) Establishing Bidding Procedures and (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets* [Docket No. 161] (the "Motion")[2] filed in the Chapter 11 cases pursuant to, *inter alia*, sections 105, 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1; and the Court having entered the *Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures and the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 210] (the "Bidding Procedures Order"), which approved, *inter alia*, (a) the Bidding Procedures, (b) the Assumption and Assignment Procedures, and (c) the Bidding and Auction Process (each as defined in the Bidding Procedures Order); and the Debtors having conducted the Auction; and upon the transcript of the Auction

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Hamon Holdings Corporation (4440); Hamon Corporation (0774); Hamon Custodis Inc. (5109); Hamon Deltak Inc. (2153); Hamon Research-Cottrell Inc. (5111); and Research-Cottrell Cooling Inc. (2385). The Debtors' mailing address is 46 E. Main Street Suite 301 (P. O. Box 1500) Somerville, NJ 08876.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures (as defined in the Motion), or to the extent not defined therein, the Motion.

(including the representations and agreements contained therein) (the "Auction Transcript"); and after a hearing on the Motion commencing on August 2, 2022, at 1:00 p.m. (the "Sale Hearing") to consider the Sales to each of the Successful Bidders identified following the conclusion of the Auction, including to each of (i) ICT Deltak Holding, Inc. (or its designated affiliate, the "ICT Purchaser") and (ii) SNT Energy Co. Ltd. (or its designated affiliate, the "SNT Purchaser", and together with the ICT Purchaser, the "Purchasers") as the Successful Bidder for certain subsets of the assets of Debtor Hamon Deltak Inc. (the "Seller" and the sale of its assets being, generally, the "Deltak Sale"), at which time evidence was presented and all interested parties were offered an opportunity to be heard with respect to the relief requested by the Motion; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and the Court having found that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue of the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered the Motion, all relief related thereto, any objections thereto, and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing; and upon the *Declaration of Brent Middleton In Support of Debtors' Motion for Entry of Orders (I) Establishing Bidding Procedures and (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets* [Docket No. 249] (the "Middleton Declaration"); and upon the *Declaration of Perry M. Mandarino Regarding Marketing of Assets and Solicitation of Bids* [Docket No. 257] (the "Mandarino Sale Declaration"); and upon the *Declaration of Neil Dahlberg Regarding Outcome of Auctions and Selection of Successful Bidders* [Docket No. 261] (the

2

"Dahlberg Sale Declaration," and together with the Mandarino Sale Declaration and the Middleton Declaration, the "Sale Declarations"); and the Court having found that after an extensive marketing process conducted by the Debtors and their investment banker in these Chapter 11 Cases, B. Riley Securities, Inc. ("B. Riley"), the Purchasers have submitted the highest or otherwise best offers for the Purchased Assets (defined below); and it appearing that the relief requested in the Motion and the Deltak Sale is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion, in the Sale Declarations, and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberations thereon; and good and sufficient cause appearing therefor:

### IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:

A.    **Final Order**. This order (the "Sale Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure (the "Civil Rules"), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

B.    **Bankruptcy Rule 7052**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    **Jurisdiction and Venue**.  The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **Statutory Predicates**. The statutory predicates for the relief granted in this Sale Order are sections 105, 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

E. **Notice**. As evidenced by the affidavits of service and publication previously filed with the Court, and based upon the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Deltak Sale, and the transactions contemplated thereby has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, and 6006 and in compliance with the Bidding Procedures Order and the Bidding Procedures, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, and the Deltak Sale is or shall be required.

F. **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including the Sale Notice Parties.

G. **Corporate Authority**. The Debtors have full corporate power and authority to execute the Purchase Agreements (defined below) with respect to the Deltak Sale and all other documents contemplated thereby. The Sale of the Purchased Assets by the Seller has been duly and validly authorized by all necessary corporate action of the Seller. The Seller has all the corporate power and authority necessary to consummate the transactions contemplated by the

4

Purchase Agreements (defined below) and has taken all corporate action necessary to authorize and approve the Purchase Agreements and the consummation by the Seller of the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for in the applicable Purchase Agreement or this Sale Order, are required for the Seller to consummate such transactions.

      H.     **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and sound business purpose and justification for the Deltak Sale to each of the Purchasers.  The terms and conditions of each Successful Bid are more specifically set forth in the written Asset Purchase Agreements substantially in the forms attached hereto as **Exhibit A** (with respect to the ICT Purchaser, the "ICT Purchase Agreement") and **Exhibit B** (with respect to the SNT Purchaser, the "SNT Purchase Agreement") (each, a "Purchase Agreement" and together, the "Purchase Agreements") with each of the Successful Bids and the Sales to each Purchaser of the assets described in its Purchase Agreement (collectively, the "Purchased Assets") presenting the best opportunity to maximize value of the Seller's assets.

      I.     **Sale in Best Interest**.  Consummation of the Deltak Sale of the Purchased Assets to the Purchasers is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

      J.     **Arm's-Length Sales**.  Each Purchase Agreement was negotiated, proposed and entered into by the Seller and the applicable Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Seller nor any Purchaser has engaged in any conduct that would cause or permit the applicable Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

K.      **Highest and Best Value**.  The Debtors determined, in accordance with their business judgment and in consultation with Consultation Party, that each Successful Bid and resulting Purchase Agreement represents the highest or best value for the applicable Purchased Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.  The Debtors' determination that the Purchase Agreements constitute the highest and best offer for the Purchased Assets is a valid and sound exercise of their fiduciary duties and business judgment.  The Bidding and Auction Process was non-collusive and duly noticed and provided a full, fair, and reasonable opportunity for any Potential Bidder to make an offer to purchase the Purchased Assets.  The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bid Procedures Order.  The consideration provided by the Purchasers pursuant to the Purchase Agreements is fair and reasonable and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws and acts).  Neither the Debtors nor the Purchasers are entering into the transactions contemplated by the Purchase Agreements fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

L.      **Good-Faith Purchaser**.  Each Purchaser is a good-faith purchaser for value and is entitled to all the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  Each Purchaser has been and will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by its Purchase Agreement.

DM3\8891576.11

M.    **Fair Consideration**.    The consideration provided by each Purchaser for the applicable Purchased Assets pursuant to its Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for such Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States; any state, territory, or possession thereof; and the District of Columbia.

N.    **Free and Clear Sales**.    The Seller is the sole and lawful owner of the Purchased Assets and no other person or entity has any ownership right, title, or interests therein.  Except as otherwise provided in the applicable Purchase Agreement, the Purchased Assets  shall be sold on an as-is, where-is basis, free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention, agreements, pledges, liens (including, without limitation, mechanic's, materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, "claims" (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual, or other commitments, restrictions, interests, and matters of any kind and

nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, or that purport to give any party a right of setoff or recoupment against, forfeiture, modification, right of first refusal, or purchase or repurchase right or option with respect to the Purchased Assets and/or the Debtors and/or Purchaser(s) respective interest therein (collectively, the "Encumbrances") because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances who did not object or withdrew objections to the Deltak Sale are deemed to have consented to the Deltak Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Encumbrances who did object (if any) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  A sale of the Purchased Assets other than one free and clear of all Encumbrances would adversely impact the Debtors, their estates, and their creditors and would yield substantially less value for the Debtors' estates with less certainty than the Deltak Sale offers.

O.    **Reliance by Purchaser**. Each Purchaser would not have entered into the applicable Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale of the applicable Purchased Assets were not free and clear of all Encumbrances, or if such Purchaser would, or in the future could, be liable for any such Encumbrances, including, as applicable, any liabilities related to the Debtors' business that will not be assumed by such Purchaser under its Purchase Agreement.  The total consideration to be provided under each

8

Purchase Agreement reflects the applicable Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the applicable Purchased Assets free and clear of all Encumbrances (including, without limitation, any potential derivative, vicarious, transferee, or successor liability interests or claims), except as set forth in the applicable Purchase Agreement.

P.      **Prompt Consummation**.  The Sales of the Purchased Assets must be approved and consummated promptly to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sales, and the Debtors and Purchasers intend to close the Sales as soon as possible in accordance with the Purchase Agreements.

Q.      **No Intentional Fraudulent Transfer**.  No Purchase Agreement was entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Seller nor Purchaser(s) is entering into the transactions contemplated by the APA fraudulently for the purpose of, and within the meaning of, statutory or common law fraudulent conveyance and/or fraudulent transfer claims.

R.      **Purchaser Not an Insider; No Successor Liability**.  No Purchaser was or is an "insider" or "affiliate" of the Debtors (as those terms are defined in the Bankruptcy Code) and no common identity of incorporators, directors or stockholders exists between any Purchaser and the Debtors. Pursuant to the Purchase Agreements, each Purchaser is not purchasing all of the Seller's assets because such Purchaser is not purchasing any of the Excluded Assets (as defined in the applicable Purchase Agreement), and no Purchaser is holding itself out to the public as a continuation of the Seller or any other Debtor. The Deltak Sale does not amount to a consolidation, merger, or de facto merger of any Purchaser and the Seller or any other Debtors

9

and/or the Debtors' estates, there is not substantial continuity between any Purchaser and the Seller or any other Debtors, there is no continuity of enterprise between any Purchaser and the Seller or any other Debtors, no Purchaser is a mere continuation of the Seller or any other Debtors or the Debtors' estates, no Purchaser constitutes a successor, continuation or assignee to or of the Seller or any other Debtors or the Debtors' estates, and no Purchaser shall be liable whatsoever for any Encumbrances or any other liens, claims, or interests of any kind under any theory of successor liability.

S.      **Legal, Valid Transfer**.  As of the Closing (as defined in the applicable Purchase Agreement) and payment of the Purchase Price (as defined in the applicable Purchase Agreement), the transfer of the applicable Purchased Assets to the applicable Purchaser will be a legal, valid, and effective transfer of such Purchased Assets and will vest such Purchaser with all right, title, and interest of the Seller to such Purchased Assets free and clear of all Encumbrances except as set forth in the applicable Purchase Agreement.   The consummation of the Deltak Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in respect of the Deltak Sale.

T.      **Purchase Agreement Not Modified**.  The terms of each Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects, and the terms of the Sale Order shall not modify the terms of any Purchase Agreement.

U.      **No *Sub Rosa* Plan**.  The Deltak Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would

afford. The Deltak Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictate a liquidating plan of reorganization for the Debtors.

V.      **No Liability for Excluded Assets or Excluded Liabilities**. By consummating the Deltak Sale and the transactions contemplated by the applicable Purchase Agreement, neither any Purchaser nor any of the applicable Purchased Assets will be subject to any claim, liability or obligation arising out of, or relating to, any Excluded Asset or any Excluded Liabilities (as defined in the applicable Purchase Agreement), including, without limitation, under the Bankruptcy Code, any theory of successor or vicarious liability, any environmental law, or any other laws of the United States; any state, territory, possession thereof; or the District of Columbia.

W.      **Legal and Factual Bases**. The legal and factual bases set forth in the Motion, in the Declarations, and at the Sale Hearing establish just cause for the relief granted herein.

X.      **Cure Notices**. Notice as to the proposed assumption and assignment of each of the Selected Assumed Contracts was provided to all non-Debtor parties to each of the Selected Assumed Contracts in accordance with the Assumption and Assignment Procedures approved in connection with the Bidding Procedures Order. Such notice was sufficient and appropriate under the particular circumstances. No other or further notice of the assumption and assignment of the Selected Assumed Contracts is necessary or shall be required; *provided, however*, that any executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts after the Sale Hearing or the entry of the Sale Order, the Debtors shall comply with ¶ l of the Assumption and Assignment Procedures with respect to any assumption or assignment thereof.

Y.      **Cure Amounts**. The Cure Amounts established in accordance with the Assumption and Assignment Procedures are the sole amounts necessary under sections 365(b)(1)(A), 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults, provide

adequate assurance of future performance, and pay all actual pecuniary losses under the Selected Assumed Contracts.

Z.     **Assumption and Assignment**.   The Seller may assume each of the Selected Assumed Contracts and assign to the applicable Purchaser those Selected Assumed Contracts identified in the Contracts & Cure Schedule attached to the applicable Purchase Agreement and assign such Selected Assumed Contracts to such Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code and this Sale Order, notwithstanding any anti-assignment clause or other similar provision in such Selected Assumed Contracts, as provided by section 365(f) of the Bankruptcy Code.   The assumption and assignment of the Selected Assumed Contracts is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, representing the reasonable exercise of sound and prudent business judgment of the Debtors.   Each Purchaser has provided evidence of adequate assurance of future performance by such Purchaser under the applicable Selected Assumed Contracts consistent with sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.   Any objections to the assumption and assignment of any of the Selected Assigned Contracts are hereby overruled.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

**General Provisions**

1.     The Motion is GRANTED and the Deltak Sale of the Purchased Assets is APPROVED as set forth herein.

2.     All objections to the Motion or relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the Deltak Sale of the Purchased Assets**

DM3\8891576.11

3.      The Purchase Agreements substantially in the forms attached hereto as **Exhibit A**

and **B** (including any immaterial amendments, supplements, and modifications thereto), and all the

terms and conditions therein, are approved in all respects.

4.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Deltak

Sale of the Purchased Assets to the Purchasers free and clear of all Encumbrances (except those

specifically permitted by the applicable Purchase Agreement), and the transactions contemplated

thereby, is approved in all respects.

5.      Except as otherwise specifically provided in the applicable Purchase Agreement,

no Purchaser shall be liable for any claims against the Debtors or any of their predecessors or

affiliates or any other third party whatsoever, and to the maximum extent permitted by applicable

law, no Purchaser shall have successor or vicarious liabilities of any kind or character (including,

without limitation, any products liability claims with respect to any Purchased Assets, inventory,

or other assets sold, shipped, or delivered prior to the applicable Closing Date (as defined in the

applicable Purchase Agreement)), whether known or unknown as of the applicable Closing

Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors

or their business or any obligations of, or claims against, the Debtors or any of their

predecessors or affiliates or any other third party whatsoever arising at any time, including,

but not limited to, any pension-related (including contribution and withdrawal) liabilities, or

liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with,

or in any way relating to the applicable Purchased Assets prior to the applicable Closing Date, all

of which liabilities or claims, if any, shall be the responsibility of the Debtors.

6.      All persons holding Encumbrances of any kind or nature whatsoever against or in

any of the Debtors or the Purchased Assets shall be forever barred, estopped, and permanently

DM3\8891576.11

enjoined from pursuing or asserting such Encumbrances against any Purchaser; any Purchaser's assets, property, successors, or assigns; or any Purchased Assets.

7.      The transactions contemplated by each Purchase Agreement are undertaken by the applicable Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order to consummate any Sale shall not affect the validity of such Sale to the applicable Purchaser. Each Purchaser is a purchaser in good faith of the applicable Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

8.      As a good-faith purchasers of the applicable Purchased Assets, each Purchaser has not entered into an agreement or colluded with any other parties interested in the Purchased Assets, and neither a Purchaser nor Debtors have engaged in any conduct that would permit any Purchase Agreement to be avoided pursuant to section 363(n) of the Bankruptcy Code. Each Purchase Agreement was negotiated, proposed and entered into by the Debtors and each Purchaser without collusion, in good faith, and as the result of arm's length bargaining positions and each Purchase Agreement is procedurally and substantively fair to all parties. No Purchaser is an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

**Sale and Transfer of Purchased Assets**

9.      Pursuant to section 363(b) of the Bankruptcy Code, the Seller is hereby authorized to sell the Purchased Assets to the Purchasers and consummate the Sales in accordance with, and subject to the terms and conditions of, the Purchase Agreements and this Sale Order and to transfer and assign all right, title, and interest (including common-law rights) to all property, licenses, and rights to be conveyed in accordance with, and subject to the terms and conditions of, the Purchase Agreements. The Debtors, including the Seller, are further authorized and directed to execute and

14

deliver, and are empowered to perform under, consummate, and implement, the Purchase Agreements, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreements, including, without limitation, the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the applicable Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to such Purchaser or reducing to possession, the applicable Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the applicable Purchase Agreement.

10.     Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, and upon payment of the amounts due at Closing under the applicable Purchase Agreement in accordance with this Sale Order, the applicable Purchased Assets shall be transferred to the applicable Purchaser upon the applicable Closing Date free and clear of all Encumbrances of any kind or nature whatsoever (except as otherwise provided in the applicable Purchase Agreement).  All Encumbrances on or against the Purchased Assets of any kind or nature whatsoever shall attach (effective upon the transfer of the applicable Purchased Assets to the applicable Purchaser) to the proceeds of the applicable Purchase Price with the same force, extent, validity, priority and effect, if any, as such Encumbrances formerly had against the applicable Purchased Assets, if any, subject to the parties' rights to challenge the extent, validity, priority and effect of the Encumbrances unless subject to and as otherwise provided in any other order of this Court in these Chapter 11 Cases. Additionally, for the avoidance of doubt, each Purchaser shall have no liability, obligation, or responsibility whatsoever to the Debtors, any governmental authority, any other entity (governmental or otherwise), or any other person with respect to, or in connection with, any applicable Excluded Asset or any Excluded Liability of any kind or character, whether known or unknown, as of the

15

applicable Closing Date, whether fixed or contingent, including, without limitation, any liability or other obligation arising under the Bankruptcy Code, any environmental laws, or any other laws of the United States; any state, territory, or possession thereof; or the District of Columbia.

11.     On each applicable Closing Date, this Sale Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the applicable Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the applicable Purchaser.

12.     All entities who are, on the applicable Closing Date, in possession of some or all of the applicable Purchased Assets are hereby directed to surrender possession of such Purchased Assets to the applicable Purchaser on such Closing Date.

13.     Except as expressly permitted by the applicable Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade, products liability and other creditors, holding or asserting Encumbrances of any kind or nature whatsoever against or in the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, senior or subordinated now existing or hereinafter arising), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, or the transfer of the applicable Purchased Assets to the applicable Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against such Purchaser, its successors or assigns, its property, or such Purchased Assets, such persons' or entities' Encumbrances.

14.     On the applicable Closing Date of the Deltak Sale to each Purchaser under its respective Purchase Agreement, neither the applicable Purchaser nor any of the applicable

16

Purchased Assets will be subject to any claim, liability or obligation arising out of, or relating to, any Excluded Asset or any Excluded Liabilities (as defined in the applicable Purchase Agreement), including, without limitation, under the Bankruptcy Code, any theory of successor or vicarious liability, any environmental law, or any other laws of the United States; any state, territory, possession thereof; or the District of Columbia.

15.     On the applicable Closing Date of the Deltak Sale to each Purchaser under its respective Purchase Agreement, all persons and entities are authorized and directed to execute and file such documents and take all other actions as may be necessary to release its Encumbrances in the applicable Purchased Assets, if any, as such Encumbrances may have been recorded or otherwise exist, with all such Encumbrances being preserved in the proceeds of the Acquired Assets as set forth in paragraph 9 above.  In the event that any person or entity fails to execute and/or file such document(s) in accordance herewith, the Debtors and Purchasers are hereby authorized to execute and file any such statements, instruments, releases and/or other documents on behalf of such person or entity with respect to the Purchased Assets.

16.     Subject to the terms and conditions of this Sale Order and the applicable Purchase Agreement, the transfer of the applicable Purchased Assets to the applicable Purchaser on the applicable Closing Date pursuant to the applicable Purchase Agreement constitutes a legal, valid, and effective transfer of such Purchased Assets and shall vest such purchaser with all right, title, and interest of the Debtors in and to such Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever (except as otherwise provided in the applicable Purchase Agreement), with all such Encumbrances to attach to the proceeds received by the Debtors with the same priority, validity, force and effect as such Encumbrances had in the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

17.     Notwithstanding the foregoing, nothing herein shall prevent (a) the Debtors from pursuing an action against any Purchaser arising under the Purchase Agreement or related documents; (b) any Purchaser from pursuing an action against the Debtors arising under the Purchase Agreement or related documents; or (c) any Purchaser from pursuing an action against any other Purchaser arising under the Purchase Agreement or related documents.

**Assumption and Assignment**

18.     The Debtors are hereby authorized, in accordance with sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, (a) to assume and assign to each Purchaser, in accordance with the applicable Purchase Agreement, effective upon the applicable Closing Date, those Selected Assumed Contracts identified in the Contracts & Cure Schedule attached to such Purchase Agreement, free and clear of all Encumbrances and other interests of any kind or nature whatsoever (except as may otherwise be provided in such Purchase Agreement), as provided by section 365(f) of the Bankruptcy Code, and (b) to execute and deliver to each Purchaser such documents or other instruments as such Purchaser deems may be reasonably necessary to assign and transfer the applicable Selected Assumed Contracts and any Assumed Liabilities or Permitted Encumbrances (as defined in the applicable Purchase Agreement) to such Purchaser in accordance with the applicable Purchase Agreement.

19.     With respect to the Selected Assumed Contracts, (a) each Selected Assumed Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each Selected Assumed Contract in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Selected Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in a Selected Assumed

18

Contract that prohibit or condition the assignment of such Selected Assumed Contract or allow the party to such Selected Assumed Contract to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Selected Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to each Purchaser of the applicable Selected Assumed Contracts, in accordance with the applicable Purchase Agreement, have been satisfied; (e) the Selected Assumed Contracts shall be transferred and assigned to, and following the applicable Closing Date, remain in full force and effect for the benefit of, the applicable Purchaser in accordance with the applicable Purchase Agreement, notwithstanding any provision in any such Selected Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to such Selected Assumed Contracts after such assignment to and assumption by the applicable Purchaser in accordance with the applicable Purchase Agreement and (f) upon each Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the applicable Purchaser shall be fully and irrevocably vested with all right, title, and interest in each applicable Selected Assumed Contract.

20.     All defaults or other obligations of the Debtors under the applicable Selected Assumed Contracts arising or accruing prior to the applicable Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the applicable Closing Date or as soon thereafter as reasonably practicable by payment of the Cure Amounts by the Debtors or Purchaser(s) in accordance with

the applicable Purchase Agreement.  To the extent that any counterparty to a Selected Assumed Contract did not object to its Cure Amount by the applicable Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Selected Assumed Contract(s) to the applicable Purchaser in accordance with the applicable Purchase Agreement.

21.    Unless otherwise represented by the Debtors in a separate pleading or other filing, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors, the applicable Purchaser, and the appropriate contract or lessor counterparty (any such amendment being deemed approved by entry of this Sale Order), the Assumption Notice [Docket No. 213], Supplemental Assumption Notice [Docket No. 224] and Second Supplemental Assumption Notice [Docket No.245] reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Selected Assumed Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the applicable Purchaser of the applicable Selected Assumed Contracts in accordance with the applicable Purchase Agreement.

22.    Upon the Debtors' assignment of the Selected Assumed Contracts to the Purchasers under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts, if any by the Debtors or the Purchasers, no default shall exist under any Selected Assumed Contract and no counterparty to any Selected Assumed Contract shall be permitted (a) to declare a default by the applicable Purchaser under such Selected Assumed Contract or (b) otherwise take action against such Purchaser as a result of the Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under such Selected Assumed Contract. The Debtors' assignment of the Selected Assumed Contracts to the Purchasers shall not subject the

Purchasers to any liability by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity,

23.    Each non-Debtor party to a Selected Assumed Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the applicable Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the applicable Closing, including those constituting applicable Excluded Liabilities or, against the applicable Purchaser, any counterclaim, defense, setoff, recoupment, or any other claim asserted or assertable against the Debtors and (ii) imposing or charging against the applicable Purchaser any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to such Purchaser of any Selected Assumed Contract in accordance with the applicable Purchase Agreement.  The validity of such assumption and assignment of each Selected Assumed Contract shall not be affected by any dispute between the Debtors and any non-Debtor counterparty to a Selected Assumed Contract relating to such contract's applicable Cure Amounts.

24.    Except as provided in the applicable Purchase Agreement or this Sale Order, after the Closing of each Sale, the Debtors and their estates shall have no further liabilities or obligations with respect to any applicable Assumed Liabilities or Permitted Encumbrances, and all holders of such Encumbrances are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property, or their assets or estates.  The failure of the Debtors or any Purchaser to enforce at any time one or more terms or conditions of any Selected Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and

21

applicable Purchaser's rights to enforce every term and condition, of such Selected Assumed Contracts.

**Miscellaneous Provisions**

25. The consideration provided by each Purchaser for the applicable Purchased Assets pursuant to its Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for such Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States; any state, territory, or possession thereof; and the District of Columbia.

26. Nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right (including, without limitation, any right to recoupment), claim, cause of action, defense, offset or counterclaim with respect to the Debtors' assets not subject to a Purchase Agreement.

27. Except with respect to enforcing the terms of the Purchase Agreements and/or this Sale Order, absent a stay pending appeal, no person or entity shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Purchase Agreements or this Sale Order.

28. The Purchase Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented through a written document signed by the parties thereto in accordance with the terms thereof, after consultation with the Consultation Party, without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transaction contemplated hereby.

DM3\8891576.11

29.     Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreements.

30.     This Court shall retain jurisdiction (a) to enforce and implement the terms and provisions of the Purchase Agreements, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents, or instruments executed therewith, *provided, however*, after Closing the Court shall only retain jurisdiction to enforce and implement the terms and provisions of the Purchase Agreements, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents, or instruments executed therewith to the extent that such item is between the Debtors and applicable Purchaser; (b) to compel transfer of the applicable Purchased Assets to the applicable Purchaser; (c) to compel each Purchaser to perform all of its obligations under the applicable Purchase Agreement, including the payment of the applicable Purchase Price; (d) to compel the Debtors to perform all of their obligations under the applicable Purchase Agreement in accordance with such Purchase Agreement; (e) to resolve any disputes, controversies or claims arising out of or relating to any Purchase Agreement; (f) to interpret, implement and enforce the provisions or this Sale Order; and (g) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Selected Assumed Contracts.

31.     The failure to include any particular provision of a Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court and the parties that each Purchase Agreement be approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the terms and provisions of Purchase Agreement and this Sale Order.

DM3\8891576.11

32.    The Debtors are hereby authorized to perform each of its covenants and undertakings as provided in the Purchase Agreements prior to each Closing without further order of the Court.

33.    No governmental unit may deny, revoke or suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Purchase Agreements, including the Sale and the assumption and assignment of the Selected Assigned Contracts.

34.    For the avoidance of doubt, nothing herein shall prevent either Purchaser, after Closing (defined by the respective Purchase Agreement), from exercising all rights and interests related to the Purchase Assets (defined by the respective Purchase Agreement), including, but not limited to the License (defined by the ICT Purchase Agreement and the SNT Purchase Agreement) if a license agreement in a form reasonably acceptable to the ICT Purchaser and the SNT Purchaser is executed between the ICT Purchaser and the SNT Purchaser.

35.    This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Encumbrances or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), each Purchaser, and all successors and assigns of each Purchaser, the Purchased Assets, and any trustees, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion thereof to proceedings under chapter 7 under the Bankruptcy Code.  This Sale Order and each Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the applicable Purchaser, and the respective successors and assigns of each of the foregoing.

DM3\8891576.11

36.    As provided by Bankruptcy Rule 7062, this Sale Order shall be effective and enforceable immediately.  The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Sale Order shall be immediately effective, and the parties may consummate the transactions contemplated by the Purchase Agreements immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions, and parties to the Purchase Agreements are authorized to close the Sales as soon as possible consistent with the terms of the applicable Purchase Agreement.

**Dated: August 3rd, 2022**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

DM3\8891576.11